IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Robert Wayne Munn, ) | C/A No. 0:20-cv-4055-PJG |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER ON PLAINTIFF'S APPEAL** |
| v. ) | **FROM THE SOCIAL SECURITY** |
| ) | **ADMINISTRATION'S DENIAL OF** |
| Kilolo Kijakazi, Acting Commissioner of the ) | **SOCIAL SECURITY BENEFITS** |
| Social Security Administration,[1] ) | |
| ) | ☐ Affirmed |
| Defendant. ) | ☒ Reversed and Remanded |
| ) | |

     This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying the plaintiff's claims for social security benefits.

**Part I—Plaintiff seeks:**

☒    Supplemental Security Income ("SSI"):  Plaintiff's age at filing:  <u>35</u>

☒    Disability Insurance Benefits ("DIB"):  Date last insured:  <u>September 30, 2020</u>

☐    Other:

Application date:  <u>April 16, 2018</u>

Plaintiff's Year of Birth:  <u>1982</u>

Plaintiff's alleged onset date:  <u>March 25, 2018</u>

**Part II—Social Security Disability Generally**

     Under 42 U.S.C. § 423(d)(1)(A), (d)(5), and/or 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) and/or § 416.905(a); <u>see</u> also <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider five issues in sequence, as outlined below. 20 C.F.R. § 404.1502(a)(4) and/or § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. <u>Id.</u>

     A claimant has the initial burden of showing that he/she is unable to return to past relevant work because of his/her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the named defendant because she recently became the Acting Commissioner of Social Security.

capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A) and/or § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## Part III—Administrative Proceedings

Date of ALJ Decision: <u>February 21, 2020</u>

In applying the requisite five-step sequential process, the ALJ found:

Step 1:    Plaintiff was engaged in substantial gainful activity during the relevant time period:
☐ Yes  ☒ No

Step 2:    ☒ Plaintiff has the following severe impairments:
<u>ulcerative colitis, with C. difficile colitis; and idiopathic irritable bowel syndrome, with intermittent diarrhea.</u>

☐ Plaintiff does not have a severe impairment.

Step 3:    ☒ Plaintiff's impairment(s) does/do not meet or medically equal a Listing.  20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Plaintiff's Residual Functional Capacity is as follows:

<u>[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can lift and carry up to 20 pounds occasionally and 10 pounds frequently, and can no more than occasionally stoop, balance, crouch, kneel, and climb stairs or ramps, but can never crawl, and never climb ladders, ropes or scaffolds.</u>

☐ Plaintiff could return to his/her past relevant work.

Step 5:    ☐ Plaintiff could not return to his/her past relevant work, but using the Medical-Vocational Guidelines ("Grids") as a framework supports a finding that Plaintiff is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App'x 2.

☒ Plaintiff could not return to his/her past relevant work, but there are jobs in the national economy that Plaintiff can perform, as follows:

| Position Title | Dictionary of Occupational Titles (DOT) # | Exertional Level | Skill Level and Specific Vocational Preparation (SVP) | Position in the National Economy |
|---|---|---|---|---|
| Ultrasonic Welder | 813.684-030 | Light | Semi-skilled/3 | 19,000 |
| Assembler | 706.684-022 | Light | Unskilled/2 | 81,000 |
| Inspector | 559.687-074 | Light | Unskilled/2 | 32,000 |
| Line Worker | 524.687-022 | Light | Unskilled/2 | 29,000 |

Date of Appeals Council decision: <u>September 18, 2020</u>

## Part IV—Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also

42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig, 76 F.3d at 589; see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  Biestek, 139 S. Ct. at 1154 (citation omitted).  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).  Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

**Part V—Issues for Judicial Review**

The ALJ failed to properly explain his findings regarding the Plaintiff's residual functional capacity ("RFC"), noting the RFC does not include any non-exertional limitations related to Plaintiff's ulcerative colitis and also does not include any accommodations for time off task.

The ALJ did not adequately evaluate Plaintiff's subjective symptomology.

(See generally Pl.'s Br., ECF No. 19.)

**Oral Argument:**

☐ **Held on            .**

☒ **Not necessary for disposition.**

**Summary of Reasons**

**A.     RFC Explanation**

Plaintiff argues the ALJ failed to explain how the RFC accounts for his ulcerative colitis, which requires frequent, unpredictable trips to the bathroom.  A claimant's residual functional capacity is "the most [a claimant] can still do despite his limitations" and is determined by assessing all of the relevant evidence in the case record.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity.  Further, "remand may be appropriate . .

. where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016).

Additionally, the United States Court of Appeals for the Fourth Circuit has repeatedly stated that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)); see also Arakas v. Comm'r, 983 F.3d 83, 98 (4th Cir. 2020). Moreover, an ALJ continues to have an obligation to "include a narrative discussion describing how the evidence supports each conclusion." Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)); see also SSR 96-8p. Similarly, remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated. Mascio, 780 F.3d at 636-37. The ALJ must "build an accurate and logical bridge from the evidence to his conclusions." Monroe, 826 F.3d at 189.

The ALJ found Plaintiff's impairments of ulcerative colitis with C. difficile colitis and idiopathic irritable bowel syndrome with intermittent diarrhea to be severe, but Plaintiff contends the ALJ's RFC fails to account for his "most severe impairments" related to his gastrointestinal issues, particularly his frequent and unpredictable bathroom use. In particular, Plaintiff argues that because he has multiple bowel movements a day, "[i]t is reasonable to suppose . . . that [he] would require at least some time away from the workstation. Moreover, [he] would need a restroom that

was readily accessible. Yet, the ALJ offers no non-exertional limitations to accommodate these symptoms." (Pl.'s Br. at 15, ECF No. 19 at 15.) In turn, the Commissioner argues that substantial evidence supports the ALJ's decision. Furthermore, the Commissioner argues that beyond Plaintiff's subjective complaints of unanticipated bathroom breaks, Plaintiff did not point to a medical record or medical opinion that his need for frequent bathroom breaks would result in time off-task.

Upon careful review of the ALJ's decision, the parties' arguments, and the records in this matter, the court is constrained to remand this matter due to the ALJ's failure to provide a function-by-function analysis. In determining Plaintiff's RFC, the ALJ acknowledged Plaintiff's hearing testimony that his ulcerative colitis "made him have the urgency to use the restroom and not know[] when he was going to experience that condition." (Tr. 42, ECF No. 12-2 at 43.) Nevertheless, the ALJ found Plaintiff's subjective complaints were not consistent with the objective evidence based on the following reasoning:

> [M]edical records indicate that he has a history of suffering from ulcerative colitis, with c difficile colitis; and idiopathic irritable bowel syndrome, with intermittent diarrhea; however, the consistency of the claimant's allegations regarding disabling symptoms and limitations, in comparison to the objective evidence, is diminished because those allegations are greater than expected in light of the objective evidence of the record.

(Tr. 42, ECF No. 12-2 at 43.) The ALJ then set forth a detailed summary of Plaintiff's medical history where he highlighted what aspects of the medical record were inconsistent with Plaintiff's alleged disability. (Tr. 42-45, ECF No. 12-2 at 43-46.) The ALJ noted how Plaintiff sought medical treatment for GI bleeding multiple times in 2017, but in May and August of that year he declined to cooperate with colonoscopies to further evaluate his condition. (Tr. 42-43, ECF No. 12-2 at 43-44.) Eventually Plaintiff underwent a colonoscopy, which showed severe pancolitis. (Tr. 43, ECF No. 12-2 at 44.) The ALJ summarized doctor visits in 2018 and 2019 when Plaintiff

was treated for rectal bleeding and other GI issues, and the ALJ cited records that showed Plaintiff responded well to Humira, although he still had some symptoms while on that medication and others.  (See Tr. 43, ECF No. 12-2 at 44 (noting in February 2018 Plaintiff had formed stool with frequency decreased on Humira); id. (noting in March 2018 Plaintiff had four, instead of eight, bowel movements a day and blood in stool was scant on Humira); Tr. 44, ECF No. 12-2 at 45 (noting Plaintiff "had been partially responsive to Humira over the last several months")).  The ALJ also highlighted multiple instances where Plaintiff did not take his medication as prescribed or did not follow doctors' orders.  (See Tr. 43, ECF No. 12-2 at 44 (noting Plaintiff left the hospital without notice following his colonoscopy "apparently against medical advice"); id. (indicating Plaintiff reported responding well to Humira, but also that Plaintiff was not taking Vancomycin as instructed, and that Plaintiff ate spaghetti when he had been instructed to stay on a clear liquid diet); Tr. 44, ECF No. 12-2 at 45 (reporting Plaintiff was taking Dificid to treat his C. difficile but only took three doses and then stopped)).  Ultimately, the ALJ acknowledged Plaintiff's testimony that his "ulcerative colitis caused him to experience urgency with which he needed to go to the restroom often and without warning," but the ALJ found such testimony to be inconsistent with the medical records, which reflected chronic non-compliance with his medication Humira, leaving the hospital without being released by his medical providers, and stopping Humira without his doctor's consent.  (Tr. 45, ECF No. 12-2 at 46.)

After summarizing Plaintiff's medical history, the ALJ considered medical opinions by state agency consultants and found them all to be persuasive, as they were consistent with Plaintiff's medical records.  (Tr. 45-46, ECF No. 12-2 at 46-47.)  The ALJ noted the medical records reflected that Plaintiff's "symptoms, both physical and mental, responded quickly and well to appropriate medications."  (Tr. 46, ECF No. 12-2 at 47.)  While no other treating or consulting

physicians offered opinions as to Plaintiff's physical limitations, the ALJ considered an opinion by Timothy J. Spurling, M.D., Plaintiff's gastroenterologist, regarding Plaintiff's non-compliance with his medication regimen. (Tr. 46, ECF No. 12-2 at 47.) The ALJ found Dr. Spurling's opinion partially persuasive, noting Dr. Spurling "opined the claimant 'responded to Humira, but for some reason he stopped that' . . . ." (Tr. 46, ECF No. 12-2 at 47.)

      Plaintiff alleges that the ALJ did not perform a proper function-by-function analysis, arguing that his frequent and unpredictable bathroom breaks would necessitate accommodations for time off-task or proximity to a bathroom in the RFC. The court agrees with Plaintiff that the ALJ's decision fails to set forth a function-by-function analysis as to what accommodations, if any, were necessary due to Plaintiff's issues. Instead, the ALJ's analysis focused primarily on Plaintiff's symptoms and his conclusion that Plaintiff responded well to Humira but was noncompliant with that medication without clear reasons. As recently explained by the Fourth Circuit, "a claimant's symptoms, and the extent to which the severity of those symptoms is supported by the record, is relevant to the RFC evaluation. . . . But an RFC assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same." Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 387 (4th Cir. 2021) (internal citation omitted). Similar to Dowling, here, the ALJ evaluated Plaintiff's symptoms—he specifically considered Plaintiff's testimony regarding the urgency and unpredictability of his bathroom use, but discounted such testimony based on his review of the medical records, which showed both improvement of Plaintiff's symptoms when on medication and Plaintiff's repeated noncompliance with prescribed treatment. Furthermore, the ALJ's review of Plaintiff's medical history included details of Plaintiff's frequent bathroom use, but the ALJ also noted the frequency

went down with proper medication and treatment. However, the ALJ did not take the additional step of translating his findings regarding Plaintiff's symptoms to Plaintiff's functional capabilities.

The Commissioner argues Plaintiff has not identified a specific medical record to support his allegation that he would be off task due to bathroom breaks, and no physician opined as much either. That argument is unavailing and misses the point that the regulations and rulings require the ALJ to perform a function-by-function analysis. See SSR 96-8p, 1996 WL 374184, at *1 ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ."); Dowling, 986 F.3d at 387 (finding the ALJ relied on an incorrect regulatory framework when he did not cite 20 C.F.R. § 416.945 or SSR 96-8p). In Dowling, the Fourth Circuit noted, "[o]bviously, the need to visit the bathroom many times throughout the day impacts one's ability to work. And yet, the ALJ did not analyze Appellant's need for regular bathroom breaks." 986 F.3d at 389. Because Dowling was decided eleven months after the ALJ issued his decision in Plaintiff's case, the ALJ did not have the benefit of the Fourth Circuit's guidance in considering a similar issue. Nevertheless, the rules that require an ALJ to perform a function-by-function analysis as part of the RFC determination were well-established when Plaintiff's case was decided, as was the law that requires an ALJ to adequately articulate his reasoning. As pointed out by Plaintiff, the medical record indicates that still Plaintiff had some symptoms when on Humira. If the ALJ found Plaintiff had *no* bathroom-related functional limitations when properly medicated, he needed to say as much in his discussion. See, e.g., Mascio, 780 F.3d at 636-37 (holding remand may be appropriate when courts are left to guess at how the ALJ arrived at the conclusion and meaningful review is frustrated). Because the ALJ failed to properly include a function-by-function analysis in his RFC discussion, the court cannot find the RFC analysis to be supported by substantial evidence. Remand is necessary.

PJG Consent SSA (Rev 09/10/21)                                                    Robert Wayne Munn

### B.     Remaining Issue

In light of the court's decision to remand for further consideration, the court need not address Plaintiff's remaining argument, as it may be rendered moot on remand. See <u>Boone v. Barnhart</u>, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Plaintiff may present his remaining argument concerning the ALJ's alleged errors on remand.

### ORDER

☐     **Affirmed. Plaintiff has failed to show that the Commissioner's decision was unsupported by substantial evidence or controlled by an error of law.**

☒     **Reversed and remanded pursuant to ☒ Sentence Four ☐ Sentence Six of 42 U.S.C. § 405(g) for further consideration consistent with this Order.**

☐     **Reversed and remanded for an award of benefits.**

**IT IS SO ORDERED.**

_/s/ Paige J. Gossett_

January 18, 2022                                  Paige J. Gossett
Columbia, South Carolina              UNITED STATES MAGISTRATE JUDGE